IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Emmanuel King Shaw,<br>Plaintiff, | )<br>)<br>) |
| v. | )   1:18cv1286 (CMH/IDD) |
| T.S. Foreman, et al.,<br>Defendants. | )<br>)<br>)<br>) |

MEMORANDUM OPINION

Proceeding pro se, Virginia inmate Emmanuel King Shaw initiated this civil action pursuant to 42 U.S.C. § 1983, alleging that he was retaliated against for exercising his rights under the First Amendment. See Dkt. Nos. 1, 10. Defendants, who are officials of Sussex I State Prison ("SISP"), have filed a motion for summary judgment, arguing that there is no basis for a finding that the actions they took were retaliatory in nature. See Dkt. Nos. 35-36. Plaintiff, having been provided the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1985), filed an opposition to defendants' motion, supported by a legal brief and several copies of institutional records. See Dkt. No. 42. Because the undisputed factual record demonstrates that there was no causal connection between plaintiff's alleged First Amendment activity and defendants' alleged retaliatory conduct, defendants are entitled to judgment in their favor.

**I. Background**

Constructing a statement of undisputed facts on which to adjudicate defendants' motion for summary judgment was a strenuous process. This is so in part due to plaintiff's failure to abide by Local Civil Rule 56(B), which requires the party opposing a motion for summary

judgment to respond to the movants' offered assertions of fact, highlighting the facts he believes are in dispute and citing to admissible evidence in the record to support the existence of such a dispute. See Loc. Civ. R. 56(B). Defendants, for their part, offered an often one-sided statement of facts that does not provide any real context for plaintiff's claims.[1]

Further complicating the matter is the fact that plaintiff has failed to offer any admissible evidence; his complaint is not verified and he has not properly authenticated the exhibits he submitted. See, e.g., Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."); Miskin v. Baxter Healthcare Corp., 107 F. Supp. 2d 669, 671 (D. Md. 1999) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)—that the documents be admissible in evidence.").

Despite plaintiff's failure to authenticate his submitted exhibits, the information they contain is included below such that a comprehensive narrative is presented in consideration of defendants' motion for summary judgment. As explained below, consideration of these facts does not preclude entry of summary judgment in favor of defendants. The factual narrative that follows, then, is drawn from affidavits and exhibits offered by both plaintiff and the defendants. To the extent possible, the narrative reflects the structure of the statement of undisputed facts offered by defendants but includes additional uncontested information and highlights disputes of fact where they exist.

1. Plaintiff is a Virginia state inmate currently incarcerated at SISP.

---

[1] For example, defendants refer in their argument section to a letter plaintiff claims to have drafted and send to a state official. See Dkt. No. 36, p. 12. They do not, however, acknowledge in their facts section that plaintiff ever sent such a document.

2. Defendant Leabough is an Inmate Hearing Officer at SISP.

3. Defendant Leach was a Counselor at SISP during all relevant periods.

4. Defendant Murphy was a Unit Manager at SISP during all relevant periods.

5. Defendant Foreman was a Unit Manager at SISP during all relevant periods.

6. Defendant Adams was a Corrections Lieutenant at SISP during all relevant periods.

7. Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 861.1 sets forth the procedures related to inmate discipline.[2]

8. On July 19, 2017, Officer T. Dent charged plaintiff with Disciplinary Offense #137A claiming to have witnessed plaintiff stroking his penis in her direction while plaintiff was in the shower.[3]

9. The following day, plaintiff was served with a copy of the disciplinary offense report and advised of his due process rights for his disciplinary hearing, which was at that time scheduled for July 27, 2017. Plaintiff was additionally moved to segregation on the basis of the disciplinary charge.

10. Plaintiff was not provided a disciplinary hearing as originally scheduled on July 27, 2017.

---

[2] Defendants have included as an exhibit a copy of OP 861.1 which purports to have come into effect on April 1, 2016. See Leabough Aff. ¶ 4. This version of the OP states that a "disciplinary hearing should be held … no later than 30 calendar days after service of the Disciplinary Offense Report." Id., Ex. A. According to the policy's effective date, this timeline, in theory, would have been in place at the time of the incidents underlying this civil action. Plaintiff observes, however, that the OP supplied by defendants has been amended on several occasions and that it is therefore not clear what sections of the procedure became operative on what specific dates. See Dkt. No. 42, pp. 8-10. This is important, plaintiff asserts, because the version of OP 861.1 that preceded the one submitted by defendants held that a hearing should occur within *fifteen* days of issuance of a disciplinary offense report, and, under this timeline, plaintiff's hearing was not timely provided. Id. In light of plaintiff's observation, the statement of undisputed facts does not list an effective date with regard to OP 861.1. This dispute is of no consequence, though, because, as explained below, the effective date of the operating procedure is not material to the resolution of plaintiff's claim.

[3] Plaintiff repeatedly asserts that he was not in the shower at the time Dent claims to have seen him act in this manner. See, e.g., Dkt. No. 10-1. Consequently, this fact has been altered to reflect the dispute between plaintiff and defendants' offered narratives.

11. On July 30, 2017, while housed in administrative segregation, plaintiff began to refuse his meals.[4]

12. Counselor Leach discussed this development with plaintiff and informed him that he could not be released from segregation while conducting a hunger strike.

13. Assisted by Counselor Leach, on July 31, 2017, defendant Murphy, who was then the Unit Manager of the segregation building and the Institutional Classification Authority ("ICA"), held an ICA hearing for plaintiff.[5]

14. In her role as a counselor, Leach did not herself have authority to move an offender from segregation but could make recommendations to the Unit Manager regarding an offender's housing status.

15. On August 9 and 15, 2017, plaintiff wrote letters to Offender Discipline Manager Karen Stapleton ("Manager Stapleton"), claiming that inmates, including he himself, were being improperly subjected to terms of segregation after being accused of #137A offenses.

16. On August 17, 2017, defendant Leabough conducted plaintiff's disciplinary hearing.

17. As Inmate Hearing Officer, defendant Leabough served as the sole fact finder in disciplinary hearings conducted at SISP. He determined the guilt or innocence of accused offenders and imposed penalties on those he found guilty. Leabough reported directly to the warden or to the warden's designee.

18. To hold the role of Inmate Hearing Officer, an individual must have a thorough understanding of the disciplinary process, be an objective and impartial decisionmaker, have successfully completed the training requirements set forth by the Chief of Corrections Operations, and follow the Institutional Hearings Officer Code of Ethics.

19. At the hearing, plaintiff was accompanied by his staff advisor and testified on his own behalf. Plaintiff was further provided the opportunity to question Officer Dent, the Reporting Officer for plaintiff's charge. Defendant Leabough did not review video of the incident but found plaintiff guilty of the charge on the basis of the testimony offered at the hearing. As punishment, Leabough ordered plaintiff serve a period of fifteen days in segregation.

20. None of defendants Leach, Murphy, or Adams played any role in charging plaintiff with a #137A offense or in conducting plaintiff's disciplinary hearing.

21. Following plaintiff's conviction, though, defendant Murphy on August 22, 2017 conducted another ICA review of plaintiff's housing status. On the basis of plaintiff's

---

[4] The factual record does not clarify when or how plaintiff's hunger strike came to an end.

[5] The decision reached in that hearing is not apparent from the factual record.

4

recent #137A conviction, Murphy recommended plaintiff be transferred to Wallens Ridge State Prison or Red Onion State Prison.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

Plaintiff's suit is based on a theory of retaliation. Specifically, plaintiff contends that he was subjected to an "invalid [disciplinary] hearing ... in retaliation for exercising [his] First Amendment right[] to seek the redress of grievances." See Dkt. No. 42, p. 2. Defendants, meanwhile, dispute that plaintiff engaged in any protected First Amendment activity and assert that there is no record evidence on which to base a finding that plaintiff's behavior inspired or "caused" their allegedly retaliatory actions. See Dkt. No. 36.

Although retaliation "is not expressly referred to in the Constitution, [it] is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of

constitutional rights." Am. Civil Liberties Union v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993). Indeed, prison officials may not, for instance, retaliate against an inmate for exercising his right to access the court, see Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978), or for filing a prison grievance, see Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017).

To prevail as to a First Amendment retaliation claim, a prisoner-plaintiff must show (1) that he engaged in protected First Amendment activity, (2) that the defendant took some action that adversely affected his First Amendment rights, and (3) that there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). But inmates' claims of retaliation by prison officials are to be treated "with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Bearing this admonition in mind, as explained below, it is clear that the evidentiary record in this case fails to support plaintiff's retaliation claim. Consequently, defendants' motion for summary judgment will be granted.

    *1.*    *Protected First Amendment Activity*

Plaintiff suggests that he engaged in protected First Amendment activity when, on August 9, 2017, he wrote a letter to Karen Stapleton, VDOC's "Offender Discipline Unit Manager," to complain about prison officials' decisions "to subject a number of offenders ... to unauthorized terms of segregation." See Dkt. No. 10, p. 13; Dkt. No. 42, p. 3. Defendants concede that inmates have a right "to petition the Government for a redress of grievances," but nevertheless suggest that plaintiff's letter did not constitute protected activity because it did not allege the existence of ongoing constitutional violations. See Dkt. No. 36, p. 11 (quoting Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017)). Specifically, defendants argue that, because

6

inmates do not possess "an inherent, constitutionally protected liberty interest to avoid" placement in segregation, plaintiff was not exercising his First Amendment rights in complaining about his or other inmates' placement there. See Dkt. No. 36, p. 11 n.2. But there is no mandate which states that an inmate may grieve only constitutionally cognizable issues with respect to his confinement. See, e.g., Martin, 858 F.3d at 249 (finding that the plaintiff had sufficiently alleged engagement in protected First Amendment activity by claiming that he had "filed a grievance against [a prison sergeant] for ... battery," a claim that arises not under the Constitution, but under state law). Consequently, this Court cannot accept defendants' argument that plaintiff's behavior was not protected by the First Amendment as a matter of law. Instead, the record contains sufficient evidence to support a finding that plaintiff's authorship of a letter to a VDOC official was constitutionally protected behavior sufficient to satisfy the first element of the test described above. Cf. Smith v. Mosley, 532 F.3d 1270, 1272-76 (11th Cir. 2008) (deeming plaintiff's letter to assistant warden of his facility in which he grieved the conditions of his confinement "to have been an exercise in speech").

    2.    *<u>Adverse Impact on First Amendment Rights</u>*

The second element of the test described in Martin requires a plaintiff to demonstrate that the defendants took some action that adversely affected his First Amendment rights. See Martin at 249. Here, plaintiff suggests that, after he sent a letter to Offender Discipline Unit Manager Stapleton, defendants subjected him to an "untimely [and] hence invalid disciplinary hearing," ultimately finding him guilty of the #137A charge and thereby adversely impacting his First Amendment rights. See Dkt. No. 10, p. 13; Dkt. No. 42, pp. 11-13. Defendants, meanwhile, argue that there is no evidence to support the notion that they "acted in a manner that was

intended to stop [plaintiff] from sending the letter" and that plaintiff has therefore failed to satisfy his burden with respect to this claim. See Dkt. No. 36, p. 12.

Plaintiff correctly observes that defendants have misapplied the relevant legal standard with regard to this element. A plaintiff need not show that the defendants acted to thwart his actual ability or inclination to engage in First Amendment activity; instead, "a plaintiff suffers adverse action" and thereby satisfies the second element of a retaliation claim "if the defendant's allegedly retaliatory conduct would *likely deter a person of ordinary firmness from the exercise of First Amendment rights.*" Martin, 858 F.3d at 249 (emphasis added). The standard is thus objective and not determined by examining "the actual effect of the retaliatory conduct on a particular plaintiff." See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

In this case, defendants engaged in two forms of activity that could be construed as adverse actions: defendants (1) placed plaintiff in administrative segregation and (2) subjected plaintiff to an untimely and allegedly inadequate disciplinary hearing for his #137A charge.[6] The first of these conditions plainly may constitute an adverse action for the purposes of a retaliation claim. See Martin, 858 F.3d at 250 ("Certainly, placing an inmate in administrative

---

[6] The hearing was untimely in the sense that plaintiff claims it occurred outside the window of time articulated by the VDOC OP 861.1. The untimely nature of this hearing served as the basis of plaintiff's previously-dismissed procedural due process claim. See Dkt. No. 10.

As noted in the facts section above, defendants dispute this and argue that the iteration of the OP effective on the dates in question provided a thirty-day window to provide plaintiff a disciplinary hearing. See Dkt. No. 36. The record, then, does not make clear whether plaintiff should have expected to receive a hearing within fifteen or thirty days of being issued his offense report. In that light, the Court, as it must, construes the facts in the light most favorable to the nonmovant and here assumes that the hearing was untimely. As will be explained in the next section of this memorandum opinion, though, there is no evidence to suggest that the hearing was delayed because of plaintiff's engagement in First Amendment activity.

8

segregation could deter a person of ordinary firmness from exercising his First Amendment Rights.") (internal quotations and citations omitted). And district courts in this Circuit have found the issuance of disciplinary charges and subsequent provision of hearings to constitute adverse actions, albeit in circumstances slightly different than those in this case. Where, for example, there is evidence that a prison official has concocted a false disciplinary charge following a plaintiff's engagement in protected First Amendment conduct, such behavior may amount to an adverse action for the purposes of a retaliation claim. See, e.g., Clark v. Beeman, No. TDC-18-0090, 2019 WL 4228400, at *11 (D. Md. Sept. 4, 2019); Wall v. Artrip, No. 7:15cv97, 2018 WL 8053774, at *23 (W.D. Va. July 18, 2018) (report and recommendation adopted in 2019 WL 1714226).

In this case, although plaintiff alleges that the #137A charge raised against him was baseless, there is no record evidence that suggests he was falsely accused and thus improperly found guilty of a disciplinary offense. There *is* evidence, however, that plaintiff did not receive a disciplinary hearing until after the date envisioned by VDOC Operating Procedures. While, as explained in past orders, VDOC's failure to abide by the timeline stated in its own policies does not in and of itself amount to a procedural due process violation, deliberate delay in providing an inmate a disciplinary hearing could conceivably deter an individual of ordinary firmness from exercising his First Amendment rights and thus satisfy the second element of the test described in Martin. Indeed, a person of ordinary firmness may well decide not to exercise his First Amendment rights if doing so means facing the specter of an indefinitely-pending disciplinary hearing and the concomitant threat of disciplinary sanctions.

Accordingly, in considering the evidence in the light most favorable to the nonmovant, the Court finds that the record contains sufficient evidence that would allow a factfinder to conclude that plaintiff suffered adverse action at the hands of the defendants.

3. *Causation*

With respect to the causal element of a First Amendment retaliation claim, an inmate must show that, but for his decision to exercise his rights, the defendant would not have taken the allegedly retaliatory act. See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); see also Oliver v. Myers, No. 7:08cv558, 2008 WL 5212409, at *2 (W.D. Va. Dec. 12, 2008) (stating that, to succeed as to a retaliation claim, a prisoner-plaintiff "must come forward with specific evidence that *but for* the retaliatory motive, the complained incident ... would not have occurred") (emphasis added). Plaintiff cannot do so here.

First, the record demonstrates that plaintiff was placed in administrative segregation on July 20, 2017 and did not write to Manager Stapleton until August 9, 2017. Because the record thus demonstrates that plaintiff was placed in administrative segregation before he engaged in protected First Amendment activity, plaintiff cannot establish that he would not have been housed in segregated confinement "but for" his decision to exercise his rights.

Second, with respect to defendants' untimely provision of a disciplinary hearing, there is insufficient evidence to support a finding that such action was taken in response to plaintiff's protected activity. Indeed, plaintiff claims that, because he did not receive a disciplinary hearing within fifteen days of service of the disciplinary report, his hearing was untimely and thus invalid. But, as noted, plaintiff does not claim to have written a letter to Karen Stapleton until August 9, 2017—twenty days after he received a copy of the disciplinary report on July 20, 2017. Accordingly, in line with plaintiff's argument, *any* hearing he received after he wrote a

10

letter to Karen Stapleton would have been untimely provided. Plaintiff thus cannot draw a causal connection between his protected activity and the untimely provision of the hearing he ultimately received.

To the extent plaintiff argues that he was not given a *fair* hearing in retaliation for his letter, he has failed to offer sufficient evidence of a causal link. It is true that plaintiff was provided his allegedly inadequate disciplinary hearing only a week after writing to Manager Stapleton and equally true that an inmate who experiences adverse action shortly after a correctional officer learns that the prisoner engaged in a protected activity may be entitled to an inference of causation. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). But, generally speaking, mere temporal proximity is "simply too slender a reed on which to rest a Section 1983 [retaliation] claim." Id.

Unfortunately for plaintiff, temporal proximity is the only evidence on which he can rely. Indeed, plaintiff concedes that he is "not [] able to present any direct evidence to show that the defendants took action against [him] for writing the August 9, 2017, letter." See Dkt. No. 42, p. 14. Plaintiff instead suggests that he "can present sufficient circumstantial evidence to prove that ... prison officials were ... opening bulk mail addressed to the offender discipline unit," evidence apparently supportive of an inference that the defendants knew about plaintiff's letter and thus offered him an unfair hearing in response to it. See id.

But a thorough review of the record does not reveal the existence of any such evidence. The closest evidence plaintiff offers is a letter he purportedly wrote to an unknown recipient on August 15, 2017, in which he stated that an appeal package he had mailed to the VDOC offender discipline unit was returned to him "telling [him] [he] had to mail [his] appeal to the offender discipline unit highlighting the address." Dkt. No. 10-1. On this basis, plaintiff abstractly

11

speculates that "the staff here at Sussex I is opening all the mail that simply has "Offender Discipline Unit" [written] on it." Id. The exhibit, however, does not include the note through which plaintiff was allegedly informed that his mail had been rejected. As a result, what inhabits the evidentiary record in this case is merely a letter written by plaintiff offering an unsupported conclusion that his letters were being screened. This will not suffice to support an inference that prison officials were screening his mail. See, e.g., Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir. 1985) (stating that reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts …' are insufficient to either support or defeat a motion for summary judgment").

Even assuming plaintiff's letters *were* screened by prison officials and that the named defendants somehow became aware of the contents of those letters, plaintiff still has failed to identify any evidence that would support a finding that defendants provided him an unfair hearing on the basis of his letter to Manager Stapleton.

In this light, it is clear that the record does not contain sufficient evidence on which a finder of fact could reasonably conclude that there existed a causal link between plaintiff's protected First Amendment activity and defendants' acts in disciplining him for an offense that predated that First Amendment activity. Consequently, plaintiff's claim fails as a matter of law.

### IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 16Th day of July 2020.

Alexandria, Virginia

/s/ Claude M. Hilton
United States District Judge