```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                      Alexandria Division
```

EMMANUEL K. SHAW,             )
                              )
    Plaintiff,                )
                              )
                              )
v.                            ) Civil Action No. 1:18-cv-1286
                              )
                              )
T.S. FOREMAN, et al.,         )
                              )
    Defendants.               )

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Renewed Motion for Summary Judgment.

In 2017, Plaintiff Emmanuel Shaw, an inmate incarcerated within the Virginia Department of Corrections (VDOC). On July 19, 2017, Plaintiff received a disciplinary charge (SXI-2017-1955) alleging that he had exposed himself to a female officer. The following morning, the Plaintiff was served with a disciplinary offense report reciting the basis for this disciplinary charge, and he was moved to housing unit 4, where he was placed on pre-hearing detention status.

On August 2, 2017, the Plaintiff was reassigned from an internal status of "Segregation- Pre-Hearing Detention," to the internal status "Segregation- Administration." The Plaintiff spent a total of 13 days assigned to pre-hearing detention.

1

On August 17, 2017, Defendant Leabough conducted the disciplinary hearing for charge SXI-2017-1955. The Plaintiff was present for that hearing, had an advisor present, and had the opportunity to request witnesses and evidence. The reporting officer was also present for the disciplinary hearing, and she provided testimony as to the basis for the charge. Plaintiff was given an opportunity to question the witness. At the hearing, Plaintiff asked the hearings officer to review the surveillance footage. After hearing the testimony of the complaining officer, the hearings officer declined to review the surveillance video, as she did not believe she had authority, at the time, to look at it. Considering that the control booth officer, at the hearing, explicitly identified the Plaintiff as the individual who had engaged in the charged behavior.

Upon consideration of the evidence presented, Defendant Leabough elected to find the Plaintiff guilty of the charged offense, and he received a penalty of 15 days disciplinary segregation, which constituted time served. Plaintiff was informed that he had been found guilty, and he was provided with a written basis for the hearing officer's decision, as well as the opportunity to appeal. Plaintiff appealed his disciplinary conviction, and that conviction was overturned by the warden on appeal on October 5, 2017.

His security level classification was also reconsidered, and he was recommended to be increased from security level 4 to security level 5. The security level increase was approved by the assistant warden, and the transfer recommendation was submitted to Central Classification Services (CCS) for consideration. CCS approved the transfer recommendation, and the CCS reviewer determined that the Plaintiff should be transferred to Red Onion State Prison (ROSP). Of note, the SISP personnel recommended that the Plaintiff be transferred to ROSP or Wallens Ridge State Prison (WRSP), and the ultimate decision as to which prison he was going to was made by CCS. The Plaintiff was therefore transferred to ROSP, where he was placed in the general population—not in long-term administrative segregation. Further, Defendant Murphy initiated the inmate transfer request and security level increase. No other named Defendant was involved in this process.

At the time of the CCS approval, the Plaintiff had two recent convictions for 137A charges, neither of which had been procedurally overturned.

On September 18, 2017, the Plaintiff was transferred from SISP to ROSP. By September 27, 2017, he had been placed in a general population unit at ROSP. At the time of the transfer, one of the Plaintiff's earlier 137A convictions had been

3

overturned. However, he had received a new 137A conviction, and he had another 137A charge still pending.

Plaintiff has a documented history of committing lewd or obscene acts in the presence of female officers, including January 1, 2015: Indecent exposure; July 28, 2015: Indecent exposure; August 9, 2015: Lewd or obscene acts directed toward another; August 15, 2015: Lewd or obscene acts directed toward another; May 9, 2019: Lewd or obscene acts directed toward another; July 24, 2019: Indecent exposure; May 21, 2020: Indecent exposure; July 4, 2020: Lewd or obscene acts directed toward another; April 1, 2023: Lewd or obscene acts directed toward another; and August 22, 2023: Lewd or obscene acts directed toward another.

In addition to the foregoing convictions, Plaintiff also received the following disciplinary charges while at SISP: April 11, 2017: Lewd or lascivious acts directed to another person. Adjudicated guilty on May 1, 2017; charge overturned on September 7, 2017. July 19, 2017: Lewd or lascivious acts directed to another person. Adjudicated guilty on August 17, 2017; charge overturned on October 5, 2017. September 1, 2017: Lewd or lascivious acts directed to another person. Adjudicated guilty on September 6, 2017; charge overturned on January 4, 2018. September 2, 2017: Lewd or lascivious acts directed to

4

another person. Adjudicated guilty on September 21, 2017; charge overturned on January 4, 2018.

In 2017, the management at SISP—where the Plaintiff was then incarcerated—decided to track inmates who received this type of disciplinary infraction, typically referred to as a 137 charge. Inmates who were convicted of 137 charges would be assessed and considered for transfer to ROSP or WRSP, prisons in the Western Region where there were not nearly as many female staff members. Placement in a prison with fewer female staff members would lessen the opportunities for male inmates to engage in this type of sexually harassing behavior. The indecent acts could include acts of exposure up to and including actively masturbating in the direction of a female employee.

Staff at SISP would track inmates who had received 137A charges and, upon conviction, we would recommend that the inmate be considered for transfer. Once SISP had about ten inmates who met this criterion for transfer, the prison would send that list to CCS for consideration and approval.

Plaintiff was part of a group of eleven inmates from SISP who were recommended for transfer from SISP to either ROSP or WRSP. Of these eleven inmates, CCS approved ten—including the Plaintiff—for transfer to the Western Region.

The Central Transportation Manager had the ultimate responsibility for assigning the transferred inmates to a

particular facility. She made the decision to assign Plaintiff to ROSP, for placement in the general population, after considering available bedspace at ROSP and WRSP. In making this decision, the Manager did not ask anyone at SISP where he should be assigned, and she did not receive any input from SISP as to which prison would be most appropriate for him.

Plaintiff was transferred out of SISP pursuant to this ongoing exchange of inmates with ROSP and WRSP, and his transfer was unrelated to any complaints or grievances the Plaintiff had filed. Plaintiff remained a security level 5, general population inmate, he was not assigned to security level "S" and placed into long-term segregation.

As of September 2017, SISP was a security level 5 facility, holding inmates assigned to both security level 4 and security level 5. As of September 2017, ROSP was a security level 5 facility, holding inmates assigned to both security level 5 and security level "S", as well as inmates at security level 6, which is an interim level for inmates who are in the process of transitioning from security level "S" to security level 5.

Of note, security level 4 and security level 5 inmates are both housed in general population. At ROSP, security level 5 inmates are general population inmates. Further, at the relevant time, there were no material differences between the privileges

6

offered to level 5 inmates in the general population at ROSP and level 5 inmates in the general population at SISP.

Plaintiff was not placed in the long-term administrative segregation housing units at ROSP. As a general population inmate, he would have been offered the same privileges and would have been housed in the same conditions of confinement as the general population housing units at SISP.

Plaintiff filed this § 1983 lawsuit against Defendants, all staff members at SISP. During a prior appeal, the Fourth Circuit construed the *pro se* complaint as bringing the following claims: (1) Defendants violated his procedural due process rights by transferring him from SISP to ROSP; (2) Defendants violated his procedural due process rights by refusing to watch the surveillance video during the underlying disciplinary hearing hearing; (3) Defendants deliberately conducted a procedurally-flawed disciplinary hearing in retaliation for complaints Plaintiff had made about his confinement in segregation awaiting his disciplinary hearing; (4) Defendants transferred the Plaintiff to a higher security level facility in retaliation for those same complaints.

Following remand from the United States Court of Appeal for the Fourth Circuit, this court appointed counsel to represent Plaintiff in this civil action. On December 18, 2023, Defendants filed a Renewed Motion for Summary Judgment. An opposition was

7

filed January 2, 2024. Followed by Defendants' reply on January 8, 2024.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

Plaintiff's procedural due process challenges include, whether his transfer from SISP to ROSP violated his right to procedural due process and whether the procedures followed at his institutional disciplinary hearing complied with his procedural due process rights.

Because the Plaintiff does not have a vested liberty interest in avoiding transfer from the general population at one prison to the general population at another prison.

The Due Process Clause of the Fourteenth Amendment "prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.'" Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (quoting U.S. Cont. amend. XIV,§ 1). "'To state procedural due process [claim], a plaintiff must [first] identify a protected liberty or property interest and [then] demonstrate deprivation of that interest without due process of law.'" Id. (quoting Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015)). Within the context of inmate litigation, "'a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Martin v. Duffy, 858 F.3d 239, 253 (4th 2017)).

On the earlier appeal of this case, the Fourth Circuit opined that the Plaintiff had plausibly alleged a procedural due process violation relative to his transfer, because "maximum security facilities like Red Onion have 'highly restrictive conditions, designed to segregate the most dangerous prisoners from the general population,'" id. (quoting Wilkinson v. Austin, 545 U.S. 209, 213 (2005)), and "incarceration in a maximum-security 'environment [is] so atypical and significant that it

9

would give rise to a liberty interest under any plausible baseline," id. (quoting Incumma v. Stirling, 791 F.3d 517, 530 (4th Cir. 2015) (internal quotations omitted)).

However, Plaintiff was not transferred from a general population prison environment into the type of long-term, administrative segregation unit at issue in Wilkinson and Incuuma. He was transferred, instead, into a general population unit at ROSP that is materially indistinguishable from the general population units at SISP. Thus, when viewed in the appropriate factual context, the Plaintiff cannot establish that he had a protected liberty interest in avoiding transfer.

Plaintiff cannot establish that either the Constitution or Virginia law provides him with an expectation of avoiding transfer from one prison facility to another. As the Supreme Court has recognized, "the Due Process Clause in and of itself" does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system." Meachum v. Fano, 427 U.S. 215, 225 (1976); see also Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoner's location, various of daily routine, changes in conditions of confinement . . . and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of

10

prison administrators to enable them to manage the prisons safely and efficiently.").

Nor does such an expectation arise under Virginia law. VDOC policy grants broad discretion to VDOC officials to determine the appropriateness of housing inmates at various facilities. VDOC Operating Procedure 830.1, at (IV)(G) ("[O]ffenders may be administratively approved for security level changes and/or institution reassignment by Central Classification Services based on appropriate consideration in the absence of a[n] . . . ICA hearing."); VDOC Operating Procedure 830.5, Transfers, Institution Reassignments (2017), at (IV)(B)(1) ("Central Classification Services (CCS) may administratively reassign offenders to other institutions without an ICA hearing for the purposes of managing the prison population.").

As in Meachum, Virginia law confers "no right on the prisoner to remain in the prison to which he was initially assigned," and "transfers between [] prisons are not conditioned upon the occurrence of specified events." 427 U.S. at 226-27. Because VDOC policy creates no expectation that an inmate will be allowed to remain in a particular prison, Plaintiff had no liberty interest in avoiding reassignment from the general population at SISP to the general population at ROSP. Because the Plaintiff had no protected liberty interest in avoiding transfer, his procedural due process claim fails at the outset

11

and the court need not continue the due process analysis on these claims.

Plaintiff also contends that his institutional disciplinary hearing violated his right to procedural due process because the hearings officer did not elect to review surveillance video footage prior to a finding of guilt. First, Defendants Adams, Murphy, and Leach had no involvement in the disciplinary hearing. Defendant Foreman's only involvement was an after the-fact administrative review of the underlying paperwork. See Cleavinger, 474 U.S. at 207 (holding that defendants involved in the administrative appeal of a disciplinary decision are entitled to immunity unless they "kn[ew] or should [have] know[n] [they were] acting outside the law" (quotations omitted)).

The claim against Defendant Foreman's role as to that proceeding-along with Defendant Leabough, the institutional hearings officer—are entitled to summary judgment. The disciplinary hearing did not deprive Plaintiff of a protected liberty interest, the federal right to procedural due process is not implicated under the circumstances of this case.

Inmates at institutional disciplinary hearings are not entitled to the same rights as a criminal defendant at a criminal trial. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 456 (1985). Within the context of a prison

disciplinary hearing, due process requirements are laid out in Wolff v. McDonnell, 418 U.S. 538, 563-71 (1974); see also Dilworth v. Adams, 841 F.3d 246, 253 (4th Cir. 2017).

However, the minimal procedural protections established in Wolff apply only when the process at issue results in the actual removal of statutory good time credits or another vested liberty interest. Wolff, 418 U.S. at 563-64 (finding that an inmate is entitled to procedural protections only when the loss of statutory good time credits or some other liberty interest is at issue). Here, the only penalty the Plaintiff received was a temporary stay in disciplinary segregation, the type of penalty that has been held not to trigger federal due process protections. See, e.g., Sandin, 515 U.S. at 486 (30-day placement in segregation); Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir. 1997) (six months in administrative segregation).

Plaintiff's procedural due process claim on his resulting transfer from SISP to ROSP, see Shaw, 49 F.4th at 127-28, then, Plaintiff similarly had no protected liberty interest in avoiding reassignment from the general population at SISP to the general population at ROSP. Because the institutional disciplinary hearing did not result in the deprivation of a protected liberty interest, the Plaintiff's procedural due process rights were not implicated, and this claim also fails.

13

Since the court finds there was no deprivation of a protected liberty interest, it need not address the qualified immunity issue with these claims.

The Court now turns to the First Amendment Retaliation claims.

As the Fourth Circuit explained, "[t]o state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that causally affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct." Shaw, 59 F.4th at 130 (quotations omitted and alterations in original). "To demonstrate a causal relationship between protected activity and the defendants' conduct," the court "applies the burden-shifting framework of the same-decision test." Id.

The test allocates a prima facie burden to the plaintiff to show that his protected activity was "a substantial or motivating factor" in the defendants' action. The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity. For a plaintiff to meet his prima facie burden of causation, he must show (1) that the defendant[s were] aware of [his] engaging in protected

14

activity and (2) some degree of temporal proximity to suggest a causal connection." Id. at 130-31 (quotations and citations omitted) (alterations in original).

As a threshold matter, Plaintiff cannot establish that he suffered an adverse action, which is critical to a retaliation claim. "First Amendment retaliation is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotations omitted). Thus, "a plaintiff [...] must show that the defendant's conduct resulted in something more than a de minimis inconvenience to [the] exercise of First Amendment rights." Id. (internal quotations omitted). Accordingly, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Id. (internal quotations omitted). The tendency of the challenged conduct to "chill" protected activity is assessed by an "objective standard[.]" Id. Although not dispositive on the matter, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity[.]" Id.

On this record, no rational trier of fact could conclude that any Defendants engaged in any action that would deter a

15

person of ordinary firmness from engaging in the claimed protected conduct here—submitting complaints and (possibly) grievances. With respect to the allegedly delayed disciplinary hearing, although Plaintiff's disciplinary hearing was conducted 28 days after he was placed in pre-hearing detention, he was moved to segregation status after 13 days, and that hearing was therefore timely. As to the transfer, simply moving an inmate from the general population at one prison to the general population at another prison is not sufficiently adverse to give rise to a retaliation claim. Transfers are a routine part of prison life, and courts afford prison officials with broad discretion in effectuating transfers and making other housing decisions. See McKune v. Lile, 536 U.S. 24, 39 (2002); Gaston, 946 F.2d at 343. The mere act of transferring an inmate from one prison to another was sufficiently adverse to give rise to a retaliation claim would undermine the long-accepted premise that retaliation claims in the prison context should "be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Further, Plaintiff cannot establish that his lone complaint to Richmond was a "substantial or motivating factor" as to either of the claimed retaliatory actions—an alleged procedurally-flawed disciplinary hearing, or his subsequent

16

transfer to ROSP. As to the first, the complaint produced during discovery post-dated the disciplinary hearing. And as to the second, the record establishes that the Plaintiff was recommended for transfer to either WRSP or ROSP as part of a larger scheme to move inmates who received 137 charges to prisons in the Western Region.

The Plaintiff has a history of accruing 137A disciplinary charges and convictions, was selected for potential transfer for the reasons explained by Warden Zook. Any complaints the Plaintiff may have sent to Richmond had nothing to do with that decision-making process. And finally, and notably, none of these Defendants were responsible for actually selecting ROSP as the prison to which the Plaintiff would be transferred, CCS decided which prison the Plaintiff would be sent.

Moreover, there is no evidence that any of these defendants had any awareness of the complaint Plaintiff submitted to Richmond in September 2017, well after his disciplinary hearing the preceding month. And all Defendants explained that they play absolutely no role in the processing of mail and correspondence at SISP. "[A] plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity." Constantine, 411 F.3d at 501. Because the Plaintiff can present no evidence that any Defendant was aware of his alleged complaints, he cannot carry his burden of proof.

17

<u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 140 (4th Cir. 2008) ("The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." (internal quotations omitted)).

Because no reasonable factfinder would conclude that Plaintiff's evidence was sufficient to carry his burden of establishing that his constitutionally protected conduct was "a substantial or motivating factor" in conducting his disciplinary hearing, or transferring him to ROSP, Defendants are entitled to summary judgment on the retaliation claims.

Because Plaintiff did not have a protected liberty interest in avoiding transfer from the general population at SISP to the general population at ROSP, Defendants are entitled to summary judgment on the transfer-related procedural due process claim. Lastly, as to the retaliation claims, evidence produced during discovery provided no support for the proposition that any named Defendant was aware of Plaintiff's alleged complaints. The transfer and disciplinary hearing were conducted entirely independently of any protected conduct, and Plaintiff can establish no causal link between his complaints and the alleged retaliatory conduct.

18

For the foregoing reasons, Defendants' Motions for Summary Judgment should be granted.

An appropriate Order shall issue.

Alexandria, Virginia
September 20, 2024

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE